AMERICAN BOX–MACH. CO. v. HUGHES et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

No. 26.

PATENTS—INFRINGEMENT—BOX-COVERING MACHINES.

The Munro patent No. 298,879, for an improvement in box covering and trimming machines, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from an interlocutory order of the circuit court of the United States for the Southern district of New York, which granted an injunction pendente lite against the infringement of claims 2 and 3 of letters patent No. 298,879, dated May 20, 1884, to Gordon Munro, for an improvement in box covering and trimming machines. Munro had received letters patent, dated July 26, 1881, and numbered 244,919, for a machine for applying a single external covering of paper upon boxes, which patent was sustained by Judge Blodgett in the Seventh circuit. Box Co. v. Wilson, 50 Fed. 425. Patent No. 298,879 was for a machine of the same general character, but which applied two or more external coverings simultaneously upon boxes, was called the double-strip patent, and was sustained by Judge Butler in the Third circuit (Machine Co. v. Day, 32 Fed. 585), and by Judge Coxe in this circuit, who delivered an oral decision. The question upon this appeal was that of infringement.

Lysander Hill, for appellant.
Edmund Wetmore, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The machine of the patent in suit had a reel containing a roll of covering paper, which was adjustable laterally on its shaft, in either direction, by being clamped between two disks or washers. The patentee says in his specification that he was thus enabled to put any number of reels or rolls upon one shaft, and confine each roll by clamping disks, "whereby the material will be properly fed to the paste roller, and be kept in right lines with the guides and the trimming material." A second reel, upon which was wound the second or trimming material, was also supported upon a separate shaft at a different level, and contained the appliances and reel-locating disks of the first reel. After the strips of material have been pasted, they pass through guides, which are metallic rods, in which are formed bends or recesses, "which are made of such size as will conform, respectively, to the width of the covering and the trimming material being used; and these guides should have as many such recesses as there are separate strips of the covering or the

trimming material." Each bend receives one of the strips. "The guide of the trimming strip is so adjusted relatively to the other that it will apply the trimming strips to the covering strips, as may be desired." All the strips then pass over a roller, "where they are brought in contact with each other and adhere together."

Claims 2, 3, and 6 are as follows:

"(2) An apparatus for applying simultaneously a plurality of strips to a box, consisting of a rotable box support, reels for the strips, pasting mechanism, and guiding mechanism for the several strips, whereby they are caused to overlap, and a suitable supporting frame, all substantially as described, whereby the strips are pasted, overlapped, and wound upon the box, as set forth.

"(3) An apparatus for applying simultaneously a plurality of strips to a box, consisting of a suitable supporting frame, a rotable box support, reels for the strips, pasting mechanism, and laterally adjustable guiding mechanism for the several strips, all substantially as described."

"(6) The trimming and covering strip reels, placed one above the other, and laterally adjustable with reference to one another, for the purpose of regulating the overlapping of the strips, in combination with the pasting mechanism and the tempering rollers, substantially as and for the purpose hereinbefore set forth."

The motion for a temporary injunction was brought upon the belief that the defendant used the Munro two-strip machine, with separate shafts at different levels, but substituted for the guides an iron bar, which served to guide the trimming strip and to control its travel relative to the covering strip, so that the two came together, one overlapping the other. One witness testified that this construction was used, but the truth of his statement was so strongly denied that the alleged infringement must rest upon the position that the laterally adjustable rolls were the only guides, and constituted the guiding mechanism of claims 2 and 3. This position was acquiesced in by the circuit judge, who said: "The mounting of the reels on different shafts and at different levels, making the reels laterally adjustable, seemed to constitute 'guiding mechanism,' within the meaning of the patent." We do not concur in this construction, but are of opinion that the specification shows that the guiding mechanism of claims 2 and 3 are the guides specially described and pointed out, or their equivalent; and that the laterally adjustable reels, while they may tend to keep the material in right lines with the guides and so regulate to some extent the overlapping of the strips, cannot properly be called "guiding mechanism." The specification is so specific in regard to the character and office of the guides as to show that there was in the mind of the patentee a distinction between adjustable reels and guides. The order of the circuit court is reversed, with costs.